## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MAHONEY, on behalf of himself and others similarly situated,<br><br>   *Plaintiff,*<br><br> v.<br><br>WALDAMEER PARK, INC.,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 20-3960 |

**PAPPERT, J.**                **March 30, 2021**

### <u>MEMORANDUM</u>

John Mahoney is a "blind, visually-impaired handicapped person." He sued Waldameer Park individually and on behalf of others similarly situated alleging Waldameer violated the Americans with Disabilities Act because its website is incompatible with screen-reading software he and others require to read website content using their computers. Waldameer moves to dismiss Mahoney's Amended Complaint and the Court grants the Motion because Mahoney lacks standing to sue.

I

A

Waldameer Park is a family owned and operated amusement and water park in Erie, Pennsylvania. *See* (Am. Compl. ¶¶ 15, 23, ECF 8); (Mot. to Dismiss 7, ECF 10-1). It owns and operates the website www.waldameer.com. (Am. Compl. ¶¶ 8, 15, 23.) Mahoney lives in Bucks County, Pennsylvania and he requires screen-reading software to read webpage content. (*Id.* at ¶¶ 5, 14, 18, 26.) He has tried "at least once in the past" to use Waldameer's website, and when he tried, he was "denied the benefit of[]

1

much of [its] content and services" because the website is not compatible with screen reader programs. (*Id.* at ¶ 27).

According to Mahoney, the website contains "information necessary to access and visit" Waldameer Park, such as the park's phone number and operating hours, directions to the park and information about attractions and ticket and season pass booking. (*Id.* at ¶ 25.) He claims the website's access barriers have deterred him from attempting to use it or visit the park. (*Id.* at ¶ 29.)

B

On August 13, 2020, Mahoney filed an initial Complaint claiming Waldameer violated Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, by failing to make its website available in a manner compatible with screen reader programs. (Compl. ¶¶ 7–8, 51–58 ECF 1.) He sought injunctive and declaratory relief on behalf of himself and others similarly situated. (*Id.* at ¶¶ 44, 59–67.) Mahoney did not state in his initial pleading that he intended to visit Waldameer Park. Rather, he alleged he intended to access Waldameer's website in the future, (*id.* at ¶ 28), and that the website and the goods and services on it were public accommodations under Title III of the ADA, (*id.* at ¶ 17).

On October 19, 2020, Waldameer moved to dismiss the initial Complaint, arguing, *inter alia*, Mahoney lacked standing because he failed to establish that he intends to visit the park or that the website's access barriers have deterred him from doing so. (First Mot. to Dismiss 13–15, ECF 6-1.) Waldameer asserted that absent such allegations, Mahoney lacked standing for his ADA claim, in part because the park, and not its website, is considered in this Circuit to be the public accommodation under Title III of the ADA. (*Id.*)

2

Mahoney then filed an Amended Complaint in which he now alleges the park, not Waldameer's website, is the place of public accommodation under Title III. (Am. Compl. ¶¶ 16, 24, 47.) He also modified his allegations to indicate he intends to visit Waldameer Park, albeit if and when the website becomes accessible to him. Mahoney initially claimed he "attempted to use Defendant's Website at least once in the past." (Compl. ¶ 26.) He now says he "attempted to use Defendant's Website at least once in the past *in order to access the Information and services presented thereon in order to access and visit the Physical Location*." (Am. Compl. ¶ 27) (emphasis added). Previously, Mahoney stated he "would like to, and intends to, attempt to access Waldameer Park, Inc.'s Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA." (Compl. ¶ 28.) His Amended Complaint claims he "would like to, and intends to, *access the Website to gather the Information and access the content and services presented thereon in order to visit the Physical Location as soon as the Website is made accessible to the visually impaired, or to test the Website for compliance with the ADA*." (Am. Compl. ¶¶ 29–30 (emphasis added).)

Waldameer argues Mahoney still lacks standing notwithstanding his new allegations and, even if he has standing, he fails to state a claim upon which relief can be granted. *See generally* (Second Mot. to Dismiss, ECF 10-1).

## II

Article III of the United States Constitution limits the exercise of judicial power to cases and controversies. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent

Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."). The case-or-controversy requirement demands that plaintiffs "establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of standing because "[s]tanding is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Id*. "[A] facial attack 'contests the sufficiency of the pleadings,' . . . 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). In evaluating a facial attack, a court must "apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)," *Aichele*, 757 F.3d at 358, and consider "only . . . the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). In evaluating a factual attack, a court "may weigh and 'consider evidence outside the pleadings.'" *Aichele*, 757 F.3d at 358 (quoting *Gould Elecs. Inc.*, 220 F.3d at 176).

To demonstrate Article III standing, a plaintiff must establish: (1) he suffered injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a

4

favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish injury-in-fact, a plaintiff must allege facts showing "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Carney v. Adams*, 141 S. Ct. 493, 499 (2020)); *see also Bognet v. Sec'y Commw. of Pa.*, 980 F.3d 336, 348 (3d Cir. 2020) (explaining a plaintiff "must be injured . . . in a way that concretely impacts [his] own protected legal interests"). "[A]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations and citation omitted). But "[a]llegations of 'possible' future injury simply aren't enough." *Bognet* 980 F.3d at 348.

## III

### A

The Parties dispute only whether Mahoney has established the first element of standing, injury in fact. *See* (Second Mot. to Dismiss 8–14); (Resp. to Second Mot. to Dismiss 11–15, ECF 13); (Reply 4–6, ECF 14). As an initial matter, Waldameer argues the Court cannot look to the Amended Complaint to determine injury in fact because subject matter jurisdiction must be determined at the time the case was initiated. *See* (Second Mot. to Dismiss 7–8). It contends, as it did in its first Motion to Dismiss, Mahoney lacked standing when he filed the initial Complaint because he did not allege his intent to visit the park. *See* (*id.* at 8–9). Courts have found plaintiffs lacked standing to bring claims under Title III of the ADA where they failed to allege a real and immediate threat of future injury with respect to a physical location. (*Id.* (citing

*Walker v. Sam's Oyster House, LLC*, No. 18-193, 2018 WL 4466076, at *3 (E.D. Pa. Sept. 18, 2018); *Hollinger v. Reading Health System*, No. 15-5249, 2017 WL 429804, at *11 (E.D. Pa. Jan. 31, 2017).)

Waldameer believes Mahoney cannot "attempt[] to cure his lack of standing with vague and speculative allegations regarding a newfound intent to visit Waldameer's physical location" in the Amended Complaint because these allegations seek to present a new basis for the Court's subject matter jurisdiction rather than correct a defective allegation or mistake. *See* (*id.* at 9–10). The new allegations thus purportedly violate the "time of filing rule," which provides that "the jurisdiction of the court depends upon the state of things at the time of the action brought," *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017) (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004)), because they change the underlying facts "in an effort to create jurisdiction." *See* (Second Mot. to Dismiss 11–12).

Mahoney claims his Amended Complaint does not attempt to change the "state of things," but rather "further specif[ies] which services Plaintiff intended on accessing on the Website at the time of filing and how exactly Plaintiff was harmed by his inability to access such services, thereby curing an alleged subject matter jurisdiction pleading deficiency." (Resp. to Second Mot. to Dismiss 8–9.) He claims he timely amended his Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A)-(B), which "function[s] . . . to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." (Resp. to Second Mot. to Dismiss 5); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citation omitted).

6

Rule 15(a) allows Mahoney to attempt to cure subject matter jurisdiction defects by amending his complaint. And because the Amended Complaint's new allegations do not change the case's underlying facts or represent a "state of things" that could not have existed at the time the initial Complaint was filed, the time of filing rule is not implicated. *See Rockwell*, 549 U.S. at 473 ("The state of things and originally alleged state of things are not synonymous."). The Supreme Court instructs that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *see also In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 298 (3d Cir. 2005) ("[T]he District Court properly acquired subject matter jurisdiction by virtue of the amended complaint."). Mahoney's standing is dependent on the sufficiency of the allegations in the Amended Complaint.

B

Waldameer's Motion is a facial attack on Mahoney's standing to sue as it precedes any answer or other presentation of competing facts. *See Aichele*, 757 F.3d at 358. Accordingly, the Court must construe the facts alleged in the Amended Complaint in the light most favorable to Mahoney. *See id.* The Amended Complaint must "clearly . . . allege facts demonstrating each element" of standing to survive the Motion. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations and citation omitted).

Under Title III of the ADA, "[b]esides attorney's fees, the only remedy available to a private litigant is injunctive relief." *Brown v. Mt. Fuji Japanese Rest.*, 615 F. App'x

7

757, 757 (3d Cir. 2015) (citing 42 U.S.C. § 12188(a)).  "To establish Article III standing to seek an injunction, a plaintiff must demonstrate a 'real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury.'"  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Pryor v. NCAA*, 288 F.3d 548, 561 (3d Cir. 2002) ("In cases where a plaintiff seeks injunctive or declaratory relief only . . . standing will not lie if adjudication . . . rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.") (internal quotations and citation omitted).  "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects."  *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 160 (3d Cir. 2006) (quoting *Lyons*, 461 U.S. at 102)).  Additionally, "[a] plaintiff's 'some day' intentions to return to the source of the illegal conduct, without any description of concrete plans, does not support a finding of 'actual or imminent' injury."  *Louisiana Counseling and Family Services Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2014 WL 941353, at *7 (D.N.J. Mar. 11, 2014), *aff'd sub nom. Brown v. Mt. Fuji Japanese Rest.*, 615 F. App'x 757 (3d Cir. 2015) (citing *Lujan*, 504 U.S. at 564).

While the Third Circuit Court of Appeals "has not directly addressed the contours of the injury in fact requirement in ADA cases. . . . district courts within this Circuit have used two methods to determine whether a plaintiff has suffered an injury in fact: (1) the intent to return method or (2) the deterrent effect method."  *Walker*, 2018 WL 4466067, at *3 (internal quotations and citation omitted).

i

There are two formulations of the intent to return method.  One examines "(1) the proximity of the defendant's business to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of plaintiff's plans to return; and (4) plaintiff's frequency of travel near the defendant's business." *Brown*, 615 F. App'x at 758; *see also Harty v. Burlington Coat Factory of Pennsylvania, LLC*, No. 11-01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011); *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012).  The other tests whether a plaintiff has established (1) the defendant engaged in past discriminatory conduct violating the ADA; (2) support for a reasonable inference the discriminatory conduct will continue; and (3) support for a reasonable inference that "based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area" he intends to return to the public accommodation in the future.  *See Hollinger*, 2017 WL 429804, at *4; *Garner v. VIST Bank*, No. 12-5258, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013); *Walker*, 2018 WL 4466067 at *3. "[T]he gist of the [intent to return] test under both formulations is the same.  Both tests require consideration of a plaintiff's intent to return to the place of accommodation, as well as his proximity and patronage to the place of accommodation." *Hollinger*, 2017 WL 429804, at *4 n.3.

Mahoney now contends that Waldameer Park, not its website, is the relevant public accommodation.  *See, e.g.* (Am. Compl. ¶¶ 16, 24, 47).  This aligns with Third Circuit precedent limiting "public accommodations" to physical places.  *See, e.g., Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998).  It is also consistent with

opinions in this District, including from other cases brought by Mahoney, finding websites are not by themselves public accommodations under the ADA. *See, e.g.*, *Mahoney v. Herr Foods, Inc.*, No. 19-5759, 2020 WL1979153, at *3 (E.D. Pa. Apr. 24, 2020); *Mahoney v. Bittrex, Inc.*, No. 19-3836, 2020 WL 212010, at *2 (E.D. Pa. Jan. 14, 2020); *Walker*, 2018 WL 4466076, at *2; *Tawam v. APCI Fed. Credit Union*, No. 18-122, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018).[1]  Mahoney's alleged intent to return to Waldameer Park is therefore pertinent to the Court's injury in fact analysis. *See Walker*, 2018 WL 4466076, at *3 (plaintiff's alleged intent to browse defendant restaurant's website insufficient to establish standing because "the 'place of public accommodation' is defendant's restaurant, not the Website.") (internal quotations and citation omitted).

1

Mahoney's Amended Complaint flunks parts one, two and four of the four-part intent to return test.  His failure to allege that he has previously been to Waldameer Park "weigh[s] heavily in favor of finding no immediate threat of future harm." *Hollinger*, 2017 WL 429804, at *5; *cf. Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 540 (W.D. Pa. 2013) ("When a plaintiff visits a public accommodation only once, the lack of a history of past patronage seems to negate the possibility of future injury at [that]

---

[1]        The Western District of Pennsylvania has declined to apply the Third Circuit Court of Appeals' decision in *Ford*, and found websites to be places of public accommodation under the ADA, in cases where a defendant owns and operates its website. *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908, 917–18 (W.D. Pa. 2017); *West v. DocuSign, Inc.*, No. 19-501, 2019 WL 3843054, at *4 (W.D. Pa. Aug. 15, 2019); *Suchenko v. ECCO USA, Inc.*, No. 18-0562, 2018 WL 3933514, at *3 (W.D. Pa. Aug. 16, 2018).  Our Court, however, has found the language in *Ford*, as well as the Third Circuit's non-precedential opinion in *Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010), "unmistakabl[y] . . . compels the conclusion that Defendant's website, on its own, is not a public accommodation under the ADA." *Herr Foods*, 2020 WL1979153, at *3.

particular location.") (internal quotations and citation omitted).  He also does not allege

any history or frequency of travel to Erie or any familial, business or other personal

connections to the area.  *See Walker*, 2018 WL 4466076, at *3 (facts alleged did not

"permit an inference that plaintiff intends to return" where plaintiff lived over 100

miles from public accommodation in Philadelphia and "[p]laintiff has not averred past

patronage of defendant's restaurant or any other restaurant in Philadelphia, nor has he

stated in the Amended Complaint any personal connection to the Philadelphia area.").

Mahoney lives in Bucks County and Waldameer Park is in Erie, which is over 350 miles

from his home.[2]  *See Harty*, 2011 WL 2415169, at *7 ("[C]ourts have consistently

maintained that a distance over 100 miles weighs against finding a reasonable

likelihood of future harm.") (quoting *Disabled Patriots of America, Inc. v. City of

Trenton*, No. 07-CV-3165, 2008 WL 4416459, at *4 (D.N.J. Sept. 24, 2008)); *see also

Macy's*, 943 F. Supp. 2d at 539 ("as the distance between a plaintiff's residence and a

public accommodation increases, the potential for the occurrence of future harms

decreases") (citation omitted).

Mahoney's best shot at establishing standing is the Amended Complaint's

allegation that he "would like to, and intends to, access the Website to gather the

Information and access the content and services presented thereon in order to visit the

Physical Location as soon as the Website is made accessible to the visually impaired."

(Am. Compl. ¶¶ 29–30.)  But his alleged intent to visit the park lacks the requisite

definitiveness.  A vague, brief, unsupported assertion of intent to visit a public

---

[2]     *See, e.g.*, Driving Directions from Bucks County, PA to 1 Waldameer Park Road, Erie, PA,
GOOGLE MAPS, http://maps.google.com (follow "Directions" hyperlink; then search starting point field
for "Bucks County, PA" and search destination field for "1 Waldameer Park Road, Erie, PA").

accommodation once access barriers are removed is still akin to a "some day" plan.  *See, e.g.*, *Brown*, 615 F. App'x at 758 ("Brown argues generally that she would like to return once the barriers are removed.  We find this argument tantamount to saying she plans to return 'some day'—an argument the Supreme Court has found insufficient to support standing."); *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454, 2009 WL 3584597, at *5 (D.N.J. Oct. 26, 2009) ("To be sure, Plaintiff alleges that he 'desires' to return once the architectural barriers are removed, but mere desire is insufficient to show a real and immediate threat of a concrete and particularized injury.").  Mahoney does not allege any concrete plans to actually visit the park or be in or near Erie.  *See Dempsey*, 2009 WL 3584597, at *4 ("[I]ntentions to return to the source of the illegal conduct "some day' . . . —without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the' requisite actual or imminent injury.") (quoting *Lujan*, 504 U.S. at 564); *cf. Harty*, 2011 WL 2415169, at *8 (definitiveness of plan demonstrated where plaintiff alleged he traveled to city of public accommodation for business and "that he will be in the nearby vicinity in September for professional reasons, that he would like to revisit the Property in September, and that he will revisit the Property in September if it has been made ADA compliant").  Mahoney's lack of any alleged ties to the Erie area further cuts against the definitiveness of his purported plans.  *See, e.g.*, *Harty*, 2011 WL 2415169, at *8 ("Whether a plaintiff has familial ties or business connections to the area where the accommodation is situated provides insight into whether the plaintiff actually intends to return.").

2

For the same reasons, Mahoney has not satisfied the third part of the three-part intent to return test.[3]  Mahoney's nebulous allegation that he will, contingent on the website becoming accessible, eventually visit the park fails on its own to demonstrate actual intent to return in the future or risk of imminent injury.  And the absence of any allegations showing past patronage of the park, proximity of the park to his home or business or any personal connections to Erie do not support a reasonable inference that he actually intends to go to the park at some point in the future.

ii

Under the deterrent effect analysis, "a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers."  *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 640 (E.D. Pa. 2016) (quoting *Garner*, 2013 WL 6731903, at *6).  The deterrent effect test requires a plaintiff to establish (1) actual knowledge of barriers preventing equal access and (2) a reasonable likelihood he would use the facility but-for the barriers.  *See Garner*, 2013 WL 6731903, at *6; *Walker*, 2018 WL 4466067 at *4.  "Even under the deterrent effect test, a plaintiff must still show that he or she has an intent to return to the place of alleged discrimination." *Hollinger*, 2017 WL 429804, at *4.[4]

---

[3]     The Court need not address the first and second parts of this test because Mahoney must satisfy all three to establish standing under the intent to return method.

[4]     The Third Circuit Court of Appeals has addressed a standing analysis for claims under Title III of the ADA only once and in a non-precedential opinion.  *See Brown v. Mt. Fuji Japanese Rest.*, 615 F. App'x 757 (3d Cir. 2015).  There, the court addressed only the intent to return test.  While it remains unclear whether the Third Circuit recognizes the deterrent effect test, the intent to return test or both, *see Hollinger*, 2017 WL 429804, at *4 n.2, district courts in this Circuit have analyzed standing applying both.

Mahoney cannot establish standing under the deterrent effect test because his alleged intent to visit the park does not demonstrate a reasonable likelihood he would use it but for any accessibility barriers.  Moreover, while he has alleged actual knowledge of access barriers on the website, he has not alleged actual knowledge of barriers preventing equal access to Waldameer Park itself.  *See, e.g.*, *Franklin Inst.*, 185 F. Supp. at 640–41 (deterrent effect test met where plaintiff experienced actual barrier at facility he supported and visited for years during a visit); *Garner*, 2013 WL 6731903, at *7 (plaintiff had actual knowledge ATM was inaccessible based on his attempt to use it and alleged the ATM "is conveniently located in an area where he frequently travels and he wants to use accessible ATMs that are convenient"); *Heinzl v. Starbucks Corp.*, No. 14-1316, 2015 WL 1021125, at *8 (W.D. Pa. Mar. 9, 2015) (plaintiff who "encountered architectural barriers at the Subject Locations, which are closest to her home and/or which she has visited frequently, and she has expressed an intent to return even though the barriers remain" had standing to sue); *cf. Clark v. McDonald's Corp.*, 213 F.R.D. 198, 230 (D.N.J. 2003) (to the extent a plaintiff has standing to assert Title III claims as to a location he has never visited, he must have "'actual notice' of an ADA violation *existing at the location* he has not yet visited") (emphasis added). Mahoney does not state how any website access barriers prevent him from accessing or enjoying the park the same way as someone who can currently read the website.  Nor does he allege there exists any good, service or information on Waldameer's website he cannot access at the park.  Indeed, no one can enjoy an amusement park's goods and services without physically going to the park.  Mahoney does not allege facts suggesting Waldameer Park's website provides access to goods and services that can be enjoyed

14

entirely online—without ever setting foot in the park.  Moreover, Waldameer Park has

only one physical location, the address for which Mahoney alleged in his Amended

Complaint.  *See* (Am. Compl. ¶ 15).

C

Waldameer refers to Mahoney as an ADA "tester," (Mot. to Dismiss 3), but

Mahoney, notwithstanding a passing reference to a desire to "test" Waldameer's

website in the future, *see* (Am. Compl. ¶ 29), does not claim to be one, *see generally*

(Resp. to Second Mot. to Dismiss).  To the contrary, he asserts numerous times he has

been personally affected by the purported access barrier's on Waldameer's website and

no one suggests Mahoney has standing because he is a tester. The Court will

nonetheless address "tester standing" in the event the Amended Complaint can be

liberally construed to raise the issue.[5]

An ADA tester "personally visits the public accommodation and tests the

barriers to access to determine whether and to what extent they are illegal, takes legal

action to enjoin defendants and then returns to the location to ensure compliance with

the injunction."  *Reviello*, 2012 WL 2196320, at *4 n.5 (internal quotations and citation

omitted).  The Third Circuit Court of Appeals has not yet addressed whether a plaintiff

can establish standing under Title III of the ADA merely because he intends to test a

public accommodation in the future.  *See, e.g., Macy's*, 943 F. Supp. 2d at 541 n.12;

---

[5]     Some courts in this Circuit have declined to evaluate whether a plaintiff who alleges
personal motivations for visiting a public accommodation has tester standing. *See, e.g., Clark*, 213
F.R.D. at 227–28 (tester standing not determined where "there is no basis in the amended complaint
to assume that [plaintiff's] sole motivation in visiting any McDonald's restaurant, was to test the
Defendants' ADA compliance."); *Garner*, 2013 WL 6731903, at *7 (tester standing not determined
where "[a]t most, we could find that Garner visited the Subject ATM with mixed motives of
attempting to avail himself to the services provided by the ATM machine and verifying ADA
compliance.").

*Harty*, 2011 WL 2415169, at *8 n.11.  Courts in the Western District of Pennsylvania have, however, conferred standing to pursue claims under Title III of the ADA on "testers."  *See, e.g.*, *Mortland v. Omni Pittsburgh Corp.*, No. 18-1067, 2021 WL 101560, at *2 (W.D. Pa. Jan. 12, 2021); *see also Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239, 2020 WL 6731130, at *7 (W.D. Pa. Aug. 4, 2020), *report and recommendation adopted*, No. 1:19-cv-239-SPB, 2020 WL 5757200 (W.D. Pa. Sept. 28, 2020) ("[G]iven the remedial purpose of Title III and the role assigned by Congress to private enforcement of its provisions, the benefit of the doubt as to standing should be accorded even to the 'tester' plaintiff.") (quoting *Heinzl v. Cracker Barrel Old Country Stores, Inc.*, No. 14-1455, 2016 WL 2347367, at *21 (W.D. Pa. Jan. 27, 2016)).

In any event, based on his allegations, Mahoney is no tester.  He has not tested or alleged any intent to test Waldameer's place of public accommodation, the park.  He only claims he intends to test Waldameer's *website* for ADA compliance.  Again, the website by itself is not a public accommodation.

## IV

A district court may properly deny leave to amend where a party has repeatedly failed to cure deficiencies in his complaint.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend may also be denied where further amendment would be futile.  *See id.*  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).  A district court applies "the same standard of legal sufficiency that applies under Rule 12(b)(6)" to assess futility.  *Id.*

16

Mahoney has already amended his Complaint. When he did so, he failed to cure his initial pleading's jurisdictional deficiencies, and he cannot do so in a Second Amended Complaint.  Mahoney cannot at this point change the facts that he has never visited Waldameer Park, lives nowhere near it and has no familial, business or personal connection to Erie.  Nor, according to Mahoney, is he capable of alleging any greater specifics regarding when, why or how he plans to visit the park.[6]  Further attempts at amendment would be futile.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[6]      Mahoney says that to allege anything other than what he has "would be improper" because "[u]ntil such [a]ccess [b]arriers are removed . . . Plaintiff cannot reasonably intend to visit Defendant's Physical Location."  (Resp. to Second Mot. to Dismiss 14.)  He adds "[a]ny specific allegations as to 'when, why or how [Plaintiff] would visit [Defendant's] physical location[]' . . . would be futile, as Plaintiff is unaware of if and when Defendant will make its Website accessible."  (*Id.*)  To be sure, the Court does not credit these assertions as correct justifications for Mahoney's deficient pleading.  A plaintiff truly facing an imminent injury in fact would be able to plead more regarding his intent and plan to visit a public accommodation, even if only in the form of demonstrating some connection to the area in which the accommodation is located.  His assertions, however, show Mahoney has nothing else to say, and can provide no more concrete detail, with respect to his intent to visit Waldameer Park.